**BUCKS COUNTY LAW DEPARTMENT**                *Attorneys for the County Defendants*

55 East Court Street, 5th floor
Doylestown, PA  18901
(215) 348-6464

Jaclyn C. Grieser, Deputy County Solicitor
Tyler B. Burns, Assistant County Solicitor

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VALERIA CORBIN, administrator of the ESTATE OF JOSHUA PATTERSON, | : : : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | Case No. 23-2784 |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| BUCKS COUNTY, et al., | : | |
| | : | |
| Defendants. | : | |

## COUNTY DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

Defendant Bucks County (the "County") and Defendants David Kratz, James Coyne, Carl Metellus, David Galione, and Kelly Reed (the "Named Defendants" and with the County, the "County Defendants"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in support of their Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6).

### INTRODUCTION

On August 1, 2022, Joshua Patterson voluntarily ingested drugs while incarcerated at the Bucks County Correctional Facility ("BCCF") and passed away from an overdose of narcotics. Plaintiff Valeria Corbin, Administrator of the Estate of Joshua Patterson, now brings this action against the County, the Named Defendants (in their individual and official capacities), and certain

"John Doe Corrections Officers."  The Complaint asserts claims for: (i) failure-to-protect under the Eighth and Fourteenth Amendments; (ii) supervisor liability under the Eighth and Fourteenth Amendments; (iii) municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); and (iv) wrongful death and survivorship under 42 Pa. Cons. Stat. §§ 8301, 8302.  The limited facts pled in the Complaint, however, fail to state any plausible claim for relief.

*First*, the failure-to-protect claim against the Named Defendants is not only duplicative of the supervisor liability claim, it is without any factual support.  Instead, the Complaint relies on improper group pleading and immaterial lawsuits that have no relevance to the claims at issue.

*Second*, there is similarly no claim for supervisor liability.  There are no facts showing the Named Defendants had knowledge of or acquiesced in the alleged drug use on Patterson's block or the purportedly inadequate screening procedures.  The Complaint merely hypothesizes that they were somehow involved in Patterson's death by virtue of their positions.

*Third*, despite the Complaint's assertion that the County maintained or failed to maintain properly at least ten policies, the Complaint fails to substantiate these claims beyond overbroad, vague, and conclusory allegations.  Much like the supervisor liability claim, the *Monell* claim jumps to the conclusion that a County policy caused Patterson's death.

*Fourth*, because the Complaint does not state any independent claims for relief, the derivative wrongful death and survivorship claims also fail.  Accordingly, the Complaint must be dismissed.

## BACKGROUND

In July 2022, Patterson was an inmate at BCCF. Compl. ¶ 9.  At the time, Patterson was on "Restricted Housing Status." *Id.* ¶ 13.  Patterson was housed on a normal cellblock at BCCF, but his movement was restricted to his own cell. *Id.*  The Complaint contends that "inmates were

actively using and distributing narcotics" on Patterson's block. *Id.* ¶ 16.  On or about August 1, 2022, Patterson ingested narcotics and died of "an overdose." *Id.* ¶ 10.

The Complaint asserts the County failed to "screen inmates before they were admitted" or "monitor the prison" to ensure that inmates were not "using" or "distributing" narcotics. *Id.* ¶¶ 17-19.  The Complaint also alleges: (i) the Named Defendants as "decision and policy makers," did not have "proper safety protocols in place on [sic] to ensure the safety of inmates," *id.* ¶¶ 21-22; and (ii) "Correctional Officers Doe did not properly monitor the block on which [Patterson] was housed," *id.* ¶ 23.

In purported support, the Complaint contends that "Bucks County has been sued in recent years for deliberate indifference to care and the safety of inmates, evincing a practice, policy, and/or de facto custom of a total lack of responsibility for the care and safety of inmates." *Id.* ¶ 32. The Complaint then lists ten civil cases from 2015 through present in which the County was named as a party for incidents involving alleged assaults, failure to provide adequate medical care, and deaths stemming from drug withdrawal and detoxification.[1] *Id.* ¶ 32(a)-(i).  None of these cases relate to "rampant" drug use or "inadequate [drug] screening procedures" at BCCF. *Id.*

On July 21, 2023, Corbin initiated the above-captioned matter.  The Complaint sets forth five claims:

|  |  |
|---|---|
| <u>Count I</u>: | Fourteenth and Eighth Amendment "failure to protect from illicit drugs" against "all individual defendants" under 42 U.S.C. § 1983; |
| <u>Count II</u>: | Fourteenth and Eighth Amendment "supervisor liability" against "all individual defendants" under 42 U.S.C. § 1983; |
| <u>Count III</u>: | Municipal liability against the County under *Monell*; and |

---

[1] The Complaint incorrectly lists "*Adams v. Bucks County et al.,* 23-cv-1178" as an eleventh case. Compl. ¶ 32(b).  This case was brought against "Delaware County" and related officials – not the County or BCCF. *Adams v. Del. Cnty.*, No. 23-cv-1178 (E.D. Pa. filed Mar. 24, 2023).

    <u>Counts IV & V</u>:   Wrongful Death and Survivorship under 42. Pa. Cons. Stat. §§ 8301, 8302.

*Id.* ¶¶ 50-104.  The County Defendants now move to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

**ARGUMENT**

### I.    Standard of Review

To withstand a challenge under Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (affirming dismissal of § 1983 claims against township and police officers). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In other words, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  While the Court "accepts as true all factual assertions" contained in the complaint, it must "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012).

### II.    The Complaint Fails to State a Failure-to-Protect Claim

    A.    <u>The failure-to-protect claim is duplicative of the supervisor liability claim as to the Named Defendants.</u>

In Count I, the Complaint asserts an Eighth and Fourteenth Amendment "failure-to-protect from illicit drugs" claim against "all individuals defendants." Compl. 9.  In Count II, the Complaint asserts an Eight and Fourteenth Amendment "supervisor liability" claim against "all individual defendants." *Id.* 10.  The Named Defendants are the only individual defendants named in the

4

Complaint. *See generally id.* ¶¶ 2-4.  The Complaint solely alleges they are liable based on their roles as supervisors.  *Id.* ¶ 21 ("Defendants Kratz, Coyne, Mettellus, Galione, Reed, and Doe *were decision and policy makers* at the Bucks County Prison in July of 2022, responsible for the safety of inmates in July of 2022." (emphasis added)); *id.* ¶ 22 ("Defendants Kratz, Coyne, Mettellus, Galione, Reed, and Doe *did not have proper safety protocols in place* on to ensure [sic] the safety of inmates in July of 2022." (emphasis added)).  There are no allegations that the Named Defendants were directly involved in Patterson's death, monitoring Patterson's cellblock, or screening for drugs at BCCF.  The failure-to-protect claim is therefore duplicative of the supervisor liability claim insofar as is brought against the Named Defendants and should be dismissed for this reason. *Ashford v. Hawkinberry*, 2017 U.S. Dist. LEXIS 156941, at *23 n.4 (W.D. Pa. Sept. 26, 2017) ("To the extent Plaintiff asserts a separate claim against [Defendant] for his alleged 'failure to protect' Plaintiff, the Court deems this claim to be duplicative of Plaintiff's other 'supervisory liability' claims …."); *see also Dimarco v. Borough of St. Clair*, 511 F. Supp 3d 545, 555 (M.D. Pa. Jan. 6, 2021) (dismissing overlapping retaliation claims as duplicative).

B.  <u>The Complaint engages in group pleading and fails to allege the requisite elements of a failure-to-protect claim.</u>

The Complaint further does not plead any facts that could sustain a failure-to-protect claim under the Eighth or Fourteenth Amendments.[2] The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984).  To state a claim for failure-

---

[2] The same standard applies to failure-to-protect claims under both the Fourteenth and Eighth Amendments. *Wilks v. City of Phila.*, 2019 U.S. Dist. LEXIS 152862, at *19 (E.D. Pa. Sept. 6, 2019) (Fourteenth Amendment "failure to protect and excessive force claim[s] proceed[] under the same analysis as an Eighth Amendment claim."); *Harriel v. Cuzzupe*, 2023 U.S. Dist. LEXIS 47342, at *6 (D.N.J. Mar. 21, 2023) ("[T]he Third Circuit … has continued to apply the Eighth Amendment deliberate indifference standard to pretrial detainee failure-to-protect claims.").

to-protect, the plaintiff must plead facts showing: "(1) he was incarcerated under conditions posing a substantial risk of serious harm, [the objective element]; (2) the official was deliberately indifferent to that substantial risk to [the inmate's] health and safety, [the subjective element]; and (3) the official's deliberate indifference caused [the inmate] harm." *Fantauzzi v. Ferraci*, 2019 U.S. Dist. LEXIS 207161, at \*19 (E.D. Pa. Nov. 29, 2019) (quoting *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012)).   To establish deliberate indifference, the plaintiff must allege that the defendant "knew of and disregarded an excessive risk to inmate health and safety." *Savage v. Carney*, 2022 U.S. Dist. LEXIS 101223, at \*11-12 (E.D. Pa. June 7, 2022).

The Complaint first suffers the fatal error of engaging in group pleading.  In the § 1983 context, a plaintiff "may not rely on vague references to a group of defendants" to state a claim. *Angle v. Smith*, 2022 U.S. Dist. LEXIS 103877, at \*9 (W.D. Pa. June 10, 2022) (quoting *Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013)).  Group pleading runs afoul of Federal Rule of Civil Procedure 8(a)(2)'s requirement that a pleading "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Angle*, 2022 U.S. Dist. LEXIS 103877, at \*9-10 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (collecting cases).

But the Complaint does precisely this – lumping all factual allegations against the Named Defendants into two paragraphs that fail to state each defendant's individualized conduct. Compl. ¶¶ 21-22.  The Complaint thus fails to provide sufficient notice to the Named Defendants of their alleged wrongdoing or individual involvement in Patterson's death.[3] *E.g.*, *Abreu v. SCI Greene State Corr. Inst.*, 2023 U.S. Dist. LEXIS 58854, at \*14-15 (E.D. Pa. Apr. 4, 2023) (dismissing

---

[3] Insofar as this claim is asserted against the John Doe Defendants, it suffers from the same group-pleading defect.  Particularly, the John Doe Defendants are not alleged to have engaged in any specific, individualized misconduct. Compl. ¶ 23 ("Defendants Correctional Officers Doe did not properly monitor the block on which the decedent was housed, to provide safety, and more specifically that narcotics were not distributed and used on the block.").

§ 1983 claim for group pleading; "[G]roup pleading … is particularly fatal to a § 1983 claim" because it fails to "provide specific factual allegations as to each Defendant's personal involvement"); *Angle*, 2022 U.S. Dist. LEXIS 103877, at *9-10 (plaintiffs' "contention that the entire group of Defendants assaulted him" insufficient to state § 1983 claim).

Even if the Complaint did not engage in impermissible group pleading, the Complaint does not allege any facts that, if true, show that: (i) he was incarcerated under conditions posing a substantial risk of serious harm; or (ii) the Named Defendants knew of and disregarded the alleged drug use on Patterson's block or inadequate screening procedures. *Savage*, 2022 U.S. Dist. LEXIS 101223, at *11-12.  While the Complaint appears to use prior lawsuits brought against the County as support, *none* of the cited cases involve a death resulting from drugs smuggled into BCCF or allege a "rampant" drug problem at BCCF. Compl. ¶¶ 32(a)-(k).  In fact, the only drug-related lawsuits involve claims relating to detoxification from drugs ingested *prior* to entering BCCF. Compl. ¶¶ 32(c), (g)-(i).  The remaining lawsuits have nothing to do with drugs or their use at BCCF.  Compl. ¶ 32(a) (assault); *id.* ¶ 32(d) (assault), *id.* ¶ 32(e) (assault and inadequate medical care); *id.* ¶ 32(f) (assault); *id.* ¶ 32(j) (delay in medical care); *id.* ¶ 32(k) (same).  The only allegation regarding drug use on Patterson's block is the Complaint's unsupported assertion that there was "rampant" drug use. *Id.* ¶ 16.

Accordingly, there are no facts alleged in the Complaint supporting either the objective or subjective elements of the failure-to-protect claim.  The failure-to-protect claim must be dismissed. *E.g.*, *Savage*, 2022 U.S. Dist. LEXIS 101223, at *11-12 (dismissing failure-to-protect claim; defendants "cannot be responsible … unless they are aware of some fact which would put them of notice to protect [plaintiff]"); *Whyte v. Rockey*, 2021 U.S. Dist. LEXIS 131700, at *18 (M.D. Pa. July 15, 2021) (dismissing failure-to-protect claim; "Plaintiff has failed to allege facts suggesting

that she faced a substantial risk of harm and that Defendants … actually knew of and disregarded an excessive risk to her health or safety"); *Johnson v. Hayman*, 2008 U.S. Dist. LEXIS 91062, at *16-17 (D.N.J. Nov. 10, 2008) (dismissing failure-to-protect claim; "Plaintiff d[id] not mention even one prior incident concerning the excessive use of force" or allege "that a substantial risk of . . . attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it.")).

### III.   The Complaint Fails to Plead Supervisor Liability against the Named Defendants

Turning to Count II, the Complaint fails to state a supervisory claim for the similar reasons. A plaintiff cannot rely on "*respondeat superior*" to establish § 1983 liability against a supervisor defendant. *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005). Instead, the plaintiff must allege that a supervisor had "personal involvement" in the alleged wrongs. *Adger v. Coupe*, 2022 U.S. App. LEXIS 6476, at *6-7 (3d Cir. 2022) (citing *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). The Third Circuit recognizes liability where the supervisor "participated in violating plaintiff's rights, directed others to violate them, or, as the person[] in charge, had knowledge of and acquiesced in their subordinates' violations."[4] *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quoting *A.M.*, 372 F.3d at 586).

The Complaint fails to meet this standard. As described, the Complaint engages in impermissible group pleading, and does not allege that any of the Named Defendants personally participated in conduct leading to Patterson's death or "directed others" to violate his civil rights. *Supra* § II.B; Compl. ¶¶ 21-22. Furthermore, as with the deliberate indifference inquiry, the

---

[4] Supervisor liability may also be established "if the[] [supervisor] established and maintained a policy, practice[,] or custom which directly caused the constitutional harm." *Santiago*, 629 F.3d at 129 n.5. As discussed below, the Complaint does not establish this either. *Infra* § IV.

Complaint does not allege any facts showing that the Named Defendants knew of and acquiesced in the alleged drug use on Patterson's block or inadequate screening procedures. *Supra* § II.B.  The Complaint "merely hypothesizes that [the Named Defendants] may have been somehow involved simply because of [their] position[s] …." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

The supervisor liability claim must be dismissed.[5]  *E.g.*, *Bush v. Dep't of Human Servs.*, 614 F. App'x 616, 620 (3d Cir. 2015) (affirming dismissal of supervisor claim; only allegation of personal involvement was a "conclusory statement" that officials were "directly involved in violating his 14th Amendment rights"); *Williams v. Dep't of Corr.*, 2022 U.S. Dist. LEXIS 12900, at *11-12 (E.D. Pa. Jan. 25, 2022) (dismissing supervisor claim; no allegations that defendant "was directly responsible" for the alleged violation or a "plausible basis" to conclude the defendant was personally involved based on "actual knowledge and acquiescence"); *Sanchez v. Litz*, 2021 U.S. Dist. LEXIS 212850, at *6 (M.D. Pa. Nov. 3, 2021) (same).

## IV.   The Complaint Fails to Plead a *Monell* Claim Against the County

A plaintiff may seek redress from a municipality under *Monell* if the municipality's "policies or customs caused [an] alleged constitutional violation." *Sanchez v. Pirolli*, 2022 U.S. Dist. LEXIS 104728, at *13 (E.D. Pa. June 13, 2022) (collecting cases).  The lack of a policy or the failure to train can also satisfy the "policy requirement" if the policymaker was "deliberately

---

[5] Insofar as the Complaint can be construed as raising a "failure-to-supervise" claim, this too fails. To state a failure-to-supervise claim, "the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001). For the reasons articulated herein, the Complaint cannot meet this "exacting" test. *Ray v. Ebbert*, 2016 U.S. Dist. LEXIS 94560, at *17-19 (M.D. Pa. July 18, 2016) (dismissing claim; complaint contained "little more than assertions of *respondeat superior* liability, coupled with factually unsupported claims that the supervisors established constitutionally corrupt policies ….'").

indifferent" to the need for such a policy or training. *Sacko v. Univ. of Pa.*, 2014 U.S. Dist. LEXIS 77080, at *7 (E.D. Pa. June 5, 2014) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (3d Cir. 1989)).  Under either theory, a plaintiff "must identify [the] custom or policy and specify what exactly that custom or policy was." *Sanchez*, 2022 U.S. Dist. LEXIS 104728, at *13 (citing *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009)).

The Complaint is muddled in what it considers to be the policy or lack thereof underlying the *Monell* claim.  A liberal reading of the Complaint yields two affirmative polices that BCCF allegedly maintained and eight policies that the County allegedly failed to maintain adequately:

1. [F]ail[ure] to create, implement, and enforce policies, practices, and procedures to ensure that proper safety was provided to the decedent, Compl. ¶ 21;

2. [F]ail[ure] to create, implement, and enforce policies, practices, and procedures to ensure that proper safety was provided to the decedent, *id.* ¶ 27;

3. [F]ail[ure] to ensure corrections personnel properly enursed [sic] that narcotics were not rampant in [BCCF], *id.* ¶ 28;

4. [F]ail[ure] to properly treated to check [sic] inmates in who [sic] were in restrictive housing to make sure the inmates were safe, *id.* ¶ 29;

5. [A] practice, policy, and/or a de facto custom of a total lack of responsibility for the care and safety of inmates, *id.* ¶ 31;

6. [F]ail[ure] to adhere to protocol in detecting and safeguarding inmates from rampant narcotics distribution and use in their county correctional facility, *id.* ¶ 75;

7. [M]aintain[ing] a policy of not sufficiently staffing the correctional facility to ensure the safety of the inmates, *id.* ¶ 76;

8. [F]ail[ure] to maintain a policy of adequately screen [sic] inmates upon intake to prevent the inmates from bringing narcotics into [BCCF], *id.* ¶ 77;

9. [F]ail[ure] to maintain a policy of adequately searching inmate cells to prevent the inmates from distributing and using narcotics in the County correctional facility, *id.* ¶ 78;

10.     [F]ail[ure] to maintain a properly secured restrictive housing unit, *id*. ¶ 79.

While there is no shortage of *Monell* theories, none are sufficient to state a claim.

Initially, the alleged affirmative policies relating to a "lack of responsibility" for inmate

safety and a policy of "understaffing" are insufficient to qualify as *Monell* "policies." *Id.* ¶¶ 31,

76.  The "lack of responsibility" policy is "far too general" and does not satisfy *Monell*'s specificity

requirement because it "encompass[es] a wide range of misconduct." *Abner v. Ellis*, 2022 U.S.

Dist. LEXIS 212403, at *18-19 (D.N.J. Nov. 23, 2022) (dismissing claim for failure to plead

"specific policy or custom" where plaintiff alleged "there [wa]s a policy, practice or custom of not

investigating inmate complaints and not taking corrective action and allowing the correctional and

medical staff 'to do whatever they feel like doing'"); *accord Groman v. Twp. of Manalapan*, 47

F.3d 628, 637 (3d Cir. 1995) (vague assertions of a policy not sufficient under *Monell*).

Likewise, this Court and the Third Circuit have found "staffing" concerns insufficient

under *Monell* because the County "has no control over the personal decisions of individual

employees whether to show up for shifts, not show up for shifts, or quit their jobs." *Jean v. City of

Phila.*, 2023 U.S. Dist. LEXIS 116586, at *13-14 (E.D. Pa. July 7, 2023); *accord Robinson v. Fair

Acres Geriatric Ctr.*, 722 F. App'x 194, 199 (3d Cir. 2018).  The Complaint is also bereft of a

single factual allegation regarding BCCF's staffing levels.   In fact, the only contention of

understaffing is the conclusory allegation that BCCF maintained an "understaffing policy." The

Complaint therefore cannot establish *Monell* liability based on an affirmative policy.[6] *E.g.*, *Jean*,

2023 U.S. Dist. LEXIS 116586, at *13-14.

---

[6] Even if these policies were sufficient, the Complaint does not allege that any policymaker
implemented them or acquiesced in their implementation.  The Complaint only alleges that "Bucks
County" had these policies.  Compl. ¶¶ 32, 76.  This too is fatal to the *Monell* claim. *E.g.*, *Stringer
v. Cnty. of Bucks*, 2023 U.S. Dist. LEXIS 28979, at *16-18 (E.D. Pa. Feb. 23, 2023) (collecting

The *Monell* claim fares no better insofar as it relies on the County's alleged "failure to maintain" certain adequate polices. Compl. ¶¶ 21, 27-29, 75, 77-79.  Notwithstanding that these allegations are also too "vague" to satisfy *Monell*, the failure-to-maintain allegations are wholly speculative about County policy without any supporting facts. *E.g.*, *Roper v. Luzerne Cnty.*, 2023 U.S. Dist. LEXIS 45853, at *12 (M.D. Pa. Mar. 17, 2023) ("[V]ague assertions that existing policies were inadequate" do not satisfy *Monell*).  This Court's recent decision in *Coyle v. Montgomery County* is instructive. 2023 U.S. Dist. LEXIS 46061, at *1 (E.D. Pa. Mar. 20, 2023). There, the plaintiff brought a *Monell* claim relating to insufficient medical care he received while incarcerated. *Id.* *41-42.  He alleged the municipal defendant "lack[ed] sufficient policies and training" relating to: (i) "observing and treating individuals" exhibiting "infection" and "pain"; (ii) properly recording "medical slips" from inmates; and (iii) providing "acute care." *Id.* at *42. Finding the Complaint "fail[ed] to provide sufficient facts about the County's alleged lack of policies and failure to train," the Court dismissed the claim. *Id.* at *46.  In doing so, the Court determined the complaint contained no factual allegations supporting the position that "the County lacked policies and training to observe and treat anyone other than him." *Id.* at *47.  Rather, the complaint "jump[ed] to the conclusion, with no factual support," that plaintiff did not receive the necessary care because "the County lacked sufficient policies." *Id*. at *48.

In this instance, as well, the Complaint makes the same factually unsupported leap.  While the Complaint is rife with legal conclusions, it alleges no facts substantiating any of the allegedly inadequate or non-existent policies.  Indeed, insofar as the Complaint contends the County's policies were inadequate, it "does not describe" the policies at issue or how they were deficient.

---

cases; dismissing *Monell* claim where plaintiff pled "no facts showing which policymaker promulgated [the allegedly] unconstitutional policy").

*Id.* at *51; *Townsend v. City of Chester*, 2020 U.S. Dist. LEXIS 134183, at *37-41 (E.D. Pa. July 29, 2020) (plaintiff "must indicate in what manner that training or supervision was deficient and how additional training and supervision would have prevented the harm"). The Complaint merely "jumps to the conclusion" that the County lacked adequate policies simply because Patterson ingested drugs on one occasion. But this does not satisfy *Monell*.[7] *E.g.*, *Coyle*, 2023 U.S. Dist. LEXIS 46061, at *48-49 (dismissing *Monell* claim; plaintiff "does not allege that this also occurred with other individuals incarcerated at MCCF; instead, he is manufacturing claims about a lack of policies or lack of training based only on what happened to him"); *Townsend*, 2020 U.S. Dist. LEXIS 134183, at *37-38 (E.D. Pa. July 29, 2020) (collecting cases; "Repeatedly, courts within the Third Circuit have dismissed similarly bareboned *Monell* allegations").

Even if the County's "lack of adequate policies" was sufficiently pled, the Complaint does not allege deliberate indifference. In this context, deliberate indifference requires: (i) "facts showing policymakers were aware of similar constitutional violations in the past"; or (ii) "it was blatantly obvious constitutional violations would result absent such training and, despite this knowledge, policymakers 'failed to take precautions against future violations.'" *Sacko*, 2014 U.S. Dist. LEXIS 77080, at *12 (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)).

As illustrated, there are *no facts* in the Complaint from which it could be inferred that the Named Defendants, as the alleged policymakers, could be deemed to have knowledge of the alleged drug use on Patterson's block or the inadequacy of drug screening procedures. *Supra* § II. Similarly, the Complaint does not present any facts showing that it was "blatantly obvious that constitutional violations would result" without the alleged policies, or that the Named Defendants

---

[7] For this reason, the Complaint also fails to satisfy *Monell*'s causation requirement. *Coyle*, 2023 U.S. Dist. LEXIS 46061, at *46 (plaintiff must show that policy deficiency "actually caused" the violation) (quoting *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 324 (3d Cir. 2005))).

"failed to take precautions against future violations." *Sacko*, 2014 U.S. Dist. LEXIS 77080, at *12. Indeed, the Complaint does not allege that the County did nothing regarding inmate searches, monitoring, and drug use.  It tacitly admits the County had relevant policies, but merely contends they were not "proper" in this singular instance. Compl. ¶¶ 27-29, 75, 77-78.  But without more, this is only a contention that Patterson's death "could have been avoided if an officer had better or more training," which does not satisfy *Monell*. *Sacko*, 2014 U.S. Dist. LEXIS 77080, at *7, 12 (no *Monell* liability where no facts supporting lack of policy relating to "medical care [for] injured suspects" (citing *Harris*, 489 U.S. 391)); *Peters v. Cmty. Educ. Ctrs, Inc.*, 2014 U.S. Dist. LEXIS 32520, at *14 (E.D. Pa. Mar. 13, 2014) ("It is only in the rare circumstance where a deficient training program so obviously would lead to constitutional violations that a single incident could demonstrate deliberate indifference.").  The *Monell* claim is thus meritless and must be dismissed.

## V. The Official Capacity Claims are Duplicative of the Deficient *Monell* Claim

It is well established that official capacity claims brought against an individual are "indistinguishable" from claims brought against "the municipal employer." *Brown v. Berks Cnty. Jail*, 2023 U.S. Dist. LEXIS 80653, at *6 (E.D. Pa. May 9, 2023) (collecting cases); *Garanin v. Lackawanna Cnty.*, 2022 U.S. Dist. LEXIS 20386, at *13 (M.D. Pa. Feb. 4, 2022) (official capacity suits are "in all respects other than name … a suit against [the municipal employer]").  As such, courts routinely dismiss official capacity claims against individual defendants as "duplicative" where the municipal employer is also named as a party. *E.g.*, *Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006); *Forman v. Montgomery Cnty. Corr. Facility*, 2020 U.S. Dist. LEXIS 22067, at *16-17 (E.D. Pa. Feb. 7, 2020) (collecting cases).

Here, the Complaint names the County as a defendant. Compl. ¶ 3.  The official capacity claims against the Named Defendants are therefore duplicative of the deficient *Monell* claims. *E.g.*,

*Cuvo*, 169 F. App'x at 693; *Forman*, 2020 U.S. Dist. LEXIS 22067, at *16-17.  Accordingly, all official capacity claims must be dismissed.

## VI.     The Derivative Wrongful Death and Survivorship Claims Fail

"[W]rongful death and survival actions are not substantive causes of action." *Johnson v. City of Phila.*, 105 F. Supp. 3d 474, 483 (E.D. Pa. 2015).  For these claims to survive, a cognizable underlying cause of action must be pled. *E.g., Byrne v. Springfield Sch. Dist.*, 2021 U.S. Dist. LEXIS 197915, at *36 (E.D. Pa. Oct. 14, 2021) (dismissing wrongful death and survival claims because plaintiffs did "not plead other 'independent, cognizable' claims"); *Christmann v. Link*, 2020 U.S. Dist. LEXIS 265034, at *2-3 (E.D. Pa. Apr. 23, 2020) (dismissing wrongful death claim because it was "contingent" on dismissed claim).

As explained, the Complaint does not plead any independent, cognizable claims. *Supra* §§ II-V.  Therefore, the wrongful death and survivorship claims must be dismissed. *Byrne*, 2021 U.S. Dist. LEXIS 197915, at *36; *Christmann*, 2020 U.S. Dist. LEXIS 265034, at *2-3.

## CONCLUSION

For these reasons, the County Defendants respectfully request the Court enter an order dismissing all claims against the County Defendants.

Date: August 11, 2023                                    BUCKS COUNTY LAW DEPARTMENT

                                                        */s/ Jaclyn C. Grieser*_____
                                                        By: Jaclyn C. Grieser (No. 93358)
                                                        Deputy County Solicitor

                                                        */s/ Tyler B. Burns*_____
                                                        By: Tyler B. Burns (No. 325660)
                                                        Assistant County Solicitor

                                                        *Attorneys for Defendants Bucks County,*
                                                        *David Kratz, James Coyne, Carl Metellus,*
                                                        *David Galione, and Kelly Reed*