IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VALERIA CORBIN, administrator of the | : | CIVIL ACTION |
| ESTATE OF JOSHUA PATTERSON | : | No.: 2:23-cv-02784-WB |
| 1918 W. Bristol St. | : | |
| Philadelphia, PA 19140 | : | TRIAL BY JURY DEMANDED |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BUCKS COUNTY | : | |
| 55 E. Court Street | : | |
| Doylestown, PA 18901 | : | |
| | : | |
| DAVID KRATZ | : | |
| 55 E. Court Street | : | |
| Doylestown, PA 18901 | : | |
| | : | |
| JAMES COYNE | : | |
| 55 E. Court Street | : | |
| Doylestown, PA 18901 | : | |
| | : | |
| CARL METELLUS | : | |
| 55 E. Court Street | : | |
| Doylestown, PA 18901 | : | |
| | : | |
| DAVID GALIONE | : | |
| 55 E. Court Street | : | |
| Doylestown, PA 18901 | : | |
| | : | |
| KELLY REED | : | |
| 55 E. Court Street | : | |
| Doylestown, PA 18901 | : | |
| | : | |
| DANIEL ONISICK | : | |
| 55 E. Court Street | : | |
| Doylestown, PA 18901 | : | |
| | : | |
| JULIO ATILES | : | |
| 55 E. Court Street | : | |
| Doylestown, PA 18901 | : | |
| | : | |

1

STEPHANIE ULMER                          :
55 E. Court Street                       :
Doylestown, PA 18901                     :
                                         :
THOMAS FABIANI                           :
55 E. Court Street                       :
Doylestown, PA 18901                     :
                                         :
TONY DOWDY                               :
55 E. Court Street                       :
Doylestown, PA 18901                     :
                                         :
JOSHUA MANNING                           :
55 E. Court Street                       :
Doylestown, PA 18901                     :
                                         :
LUIS VENTUREIRA                          :
55 E. Court Street                       :
Doylestown, PA 18901                     :
                                         :
KAITLYN MCGINLEY                         :
55 E. Court Street                       :
Doylestown, PA 18901                     :
                                         :
CONNOR WILCOX                            :
55 E. Court Street                       :
Doylestown, PA 18901                     :
                                         :
ZACH SHERMAN                             :
55 E. Court Street                       :
Doylestown, PA 18901                     :
                                         :
JOHN DOE CORRECTIONS OFFICERS            :
55 E. Court Street                       :
Doylestown, PA 18901                     :
                                         :
                 Defendants.             :
_____  :

## <u>FIRST AMENDED COMPLAINT</u>

2

Plaintiff, Valeria Corbin, as the Administrator of the Estate of Joshua Patterson, by and through her attorney, Brian Zeiger, Esq., hereby alleges the following:

## PARTIES

1.    Plaintiff, Valeria Corbin, the Administrator of the Estate of Joshua Patterson, is an adult individual who currently resides at 1918 W. Bristol St., Philadelphia, PA 19140.

2.    Defendant Bucks County, is a Municipality in the Commonwealth of Pennsylvania doing business at 55 E. Court Street, Doylestown, PA 18901.

3.    Defendants David Kratz, James Coyne, Carl Metellus, David Galione, Kelly Reed, Daniel Onisick, and John Does, work for the corrections department of Defendant Bucks County, are believed to be decision makers on prison policy at the Bucks County Prison at the time in question subject to the instant complaint, with a business address of 55 E. Court Street, Doylestown, PA 18901, and all being sued in both their individual and official capacities.

4.    Defendants Julio Atiles, Stephanie Ulmer, Thomas Fabiani, Tony Dowdy, Joshua Manning, Luis Ventureira, Kaitlyn McGinley, Connor Wilcox and John Does are also sued as corrections officers in their individual capacities who were assigned to and working at the Bucks County Prison during the time period giving rise to the instant action, with a business address of 55 E. Court Street, Doylestown, PA 18901.

5.    Defendant Zach Sherman is sued as a corrections officer in both his individual and official capacity who was working as a corrections officer at the Bucks County Prison, and was the supervisor of the module where the decent was housed, during the time period giving rise to the instant actions, with a business address of 55 E. Court Street, Doylestown, PA 18901.

6.    At all times material hereto, the Defendants acted under color of law and within the course

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

and scope of their employment, pursuant to the customs, policies, practices, ordinances, regulations, and directives of Bucks County.

## JURISDICTION AND VENUE

7.      This action is brought pursuant to 42 U.S.C. § 1983.

8.      Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343.

## FACTUAL BACKGROUND

9.      Plaintiff re-alleges each and every averment as set forth previously, as if the same were set forth here in full.

10.     On or about July 25, 2022, Allen Rhoades was arrested for serious narcotics-related offenses.

11.     Rhoades was initially arraigned, bail was set, and he was transferred to the Bucks County Prison on July 26, 2022.

12.     Mr. Rhoades was not properly searched at the time he entered the Bucks County Prison.

13.     At the time Mr. Rhoades entered the prison, Defendants Atilies, Ulmer, and Fabiani were working as intake officers and failed to properly search Mr. Rhoades upon intake.

14.     Defendants Atilies, Ulmer, and Fabiani, made a cursory pat down of Rhoades at the time he entered a holding cell at the Bucks County Prison.

15.     Defendants Atilies, Ulmer, and Fabiani failed to find a substantial amount of illegal narcotics in Mr. Rhoades' pants area.

16.     Defendants Atilies, Ulmer, and Fabiani were all personally involved in failing to properly screen and search Rhoades at intake.

17.     Based upon information and belief, Defendants Bucks County, David Kratz, James

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

Coyne, Carl Metellus, David Galione, Kelly Reed, and Daniel Onisick, had a policy and procedure for intake, search, and pat down, of incoming inmates at the Bucks County Prison during the time period of the instant matter.

18.     Based upon information and belief, Defendants Bucks County, David Kratz, James Coyne, Carl Metellus, David Galione, Kelly Reed, and Daniel Onisick failed to train and supervise Defendant Atilies, Ulmer, and Fabiani to ensure they were following the procedure for intake, search, and pat down of incoming inmates, and failed to train and supervise the same Defendants as to the above mentioned procedures.

19.     Defendants Bucks County, David Kratz, James Coyne, Carl Metellus, David Galione, Kelly Reed, and Daniel Onisick failed to properly train and supervise Defendants Atilies, Ulmer, and Fabiani how to properly screen inmates before they were admitted to the prison population to ensure they were not bringing drugs into the facility.

20.     On two different occasions while in the holding cell, under the supervision of Defendant Atilies, Ulmer, and Fabiani, Mr. Rhoades reached for his pants area and retrieved wax bags of containing fentanyl, which he ingested.

21.     Later, Mr. Rhoades was given lunch by prison staff in a brown paper bag.

22.     Mr. Rhoades emptied the brown paper bag and transferred fentanyl and methamphetamine from his pants into the brown paper bag.

23.     Later that day, Mr. Rhoades was given a prison issued clothing bag by prison staff; Mr. Rhoades transferred the brown lunch bag containing the narcotics into the prison issued clothing bag.

24.     Later that day, Mr. Rhoades was transferred to his permanent housing module.

5

25.     Mr. Rhoades smuggled a significant amount of fentanyl into the Bucks County Prison, and into his permanent housing module.

26.     Shortly after Mr. Rhoades was transferred to his housing module he began to distribute fentanyl and methamphetamine on the module to other inmates, including but not limited to the decedent.

27.     Allen Rhoades distributed narcotics to inmate Mallet Clark on the housing module.

28.     The decedent was an inmate at the Bucks County Prison in July of 2022, during the time period mentioned above where Allen Rhoades smuggled and distributed narcotics into the Bucks County Prison.

29.     In July of 2022, the decedent was supposed to be in a restrictive housing unit.

30.     However, based on information and belief, the Bucks County Correctional Facility does not maintain a restrictive housing unit; instead, they house inmates on a normal block, but restrict their movement to their own cell.

31.     In July of 2022, the decedent was restricted to his own cell on a normal block.

32.     On July 26, 2022, Mallet Clark went to the decedent's "restricted cell" multiple times.

33.     Later that same day, Mallet Clark went to Allen Rhoades's cell, to the decedent's cell, exchanged items with the decedent, and returned back to Allen Rhoades's cell.

34.     Based upon information and belief, Plaintiff avers Clark distributed narcotics to the decedent.

35.     Later that same day, Allen Rhoades went over to the decedent's "restricted cell" and sold narcotics to the decedent in exchange for "pinks," which is Sweet and Low sugar for coffee.

36.     On July 26, 2023, Defendants Dowdy, Manning, Ventureira and McGinley were working

6

on the housing module at the Bucks County Prison where Rhoades, Mallet and the decedent were housed and distributing narcotics.

37.     Defendants Dowdy, Manning, Ventureira, and McGinley failed to discover that narcotics were being distributed on the module to which they were assigned while working at the Bucks County Prison.

38.     Defendants Dowdy, Manning, Ventureira, and McGinley failed to discover that narcotics were on Rhoades's person when he entered the housing model.

39.     Defendants Dowdy, Manning, Ventureira, and McGinley were personally involved in failing to properly maintain and insure a drug housing module.

40.     On July 26, 2022, based on information from a confidential informant, Defendant Ventureira learned Allen Rhoades possessed narcotics in his cell, searched his cell, and recovered narcotics.

41.     On July 26, 2022, Defendant Zach Sherman was the direct supervisor of the housing model where Rhoades was distributing narcotics.

42.     During the search of Mr. Rhoades's cell and recovery of narcotics, Defendant Sherman was personally involved in restraining Mr. Rhoades during the search.

43.     Defendant Sherman failed to properly train and supervise Dowdy, Manning, Ventureira, and McGinley while they were working in the housing module where Rhoades was distributing narcotics.

44.     On July 26, 2022, based upon information and belief, Defendant Sherman was responsible for supervising Defendants Dowdy, Manning, Ventureira, and McGinley to insure they followed the policies and procedures of the Bucks County Prison.

7

45.     Further, on July 26, 2022, Defendant Sherman failed to properly supervise Defendants Dowdy, Manning, Ventureira, and McGinley, which ultimately led to Rhoades being able to distribute narcotics on the housing module where the decedent later overdosed on the same narcotics.

46.     On July 27, 2022, Defendant Wilcox was working on the housing module at the Bucks County Prison where the decedent was housed.

47.     Defendant Wilcox failed to properly check on the decedent to make sure he was safe and alive.

48.     At or about 3:44 a.m., while conducting routine checks on the housing module, Defendant Wilcox found the decedent in the cell not breathing.

49.     Life saving measures were taken to revive the decedent and he was transported to the Doylestown Hospital.

50.     However, based on information and belief, the decedent never regained consciousness and was pronounced dead on August 1, 2022.

51.     The decedent died due to an overdose of narcotics.

52.     Based on information and belief, inmates were actively using and distributing narcotics on the block where the decedent was housed.

53.     Defendants Bucks County, David Kratz, James Coyne, Carl Metellus, David Galione, Kelly Reed, Daniel Onisick, and Zach Sherman failed to properly train and supervise Defendants Dowdy, Manning, Ventureira and McGinley to monitor the prison module to ensure that inmates were not distributing narcotics in July of 2022.

54.     Defendants Bucks County, David Kratz, James Coyne, Carl Metellus, David Galione,

8

Kelly Reed, Daniel Onisick and Zach Sherman failed to properly train and supervise Dowdy,

Manning, Ventureira and McGinley to monitor the prison to insure that inmates were not using

narcotics in July of 2022.

55.     As a result of Defendants Bucks County, David Kratz, James Coyne, Carl Metellus,

David Galione, Kelly Reed, Zach Sherman and Daniel Onisick's failure to maintain a safe

prison, free of narcotics, Plaintiff overdosed on narcotics and died.

56.     Defendants David Kratz, James Coyne, Carl Metellus, David Galione, Kelly Reed, and

Daniel Onisick were decision and policy makers at the Bucks County Prison in July of 2022,

responsible for the safety of inmates.

57.     Defendants David Kratz, James Coyne, Carl Metellus, David Galione, Kelly Reed, and

Daniel Onisick did not have proper safety protocols in place on to ensure the safety of inmates in

July of 2022.

58.     Defendant Bucks County failed to create, implement, and enforce policies, practices, and

procedures to ensure that proper safety was provided to the decedent.

59.     The averred mistreatment of the decedent was objectively serious—the availability and

use of narcotics in custody at the Bucks County Correctional Facility is not an acceptable

practice under any circumstance.

60.     The averred conduct shows the defendant subjectively ignored the risk to inmate safety

by not having better protections at the Bucks County Correctional facility to ensure narcotics

were not rampant throughout the prison.

61.     Additionally, Bucks County has been sued in recent years for deliberate indifference to

care and the safety of inmates, evincing a practice, policy, and/or a de facto custom of a total

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

lack of responsibility for the care and safety of inmates; that is, Bucks County does not care about the safety of inmates in their correctional facility and has the minimum amount of safety measures in place at the correctional facility, as evinced by the following cacophony of recent cases:

a. In *Mubarak Alexander v. Vingless, et al.,* 21-cv-4633, Mr. Alexander was on "suicide watch", when he was assaulted by various guards. He was strapped into a restraint chair, and assaulted by two guards. He was refused medical treatment for his injuries. Later, after filing multiple grievances regarding the assault and deprivation of medical care, the warden himself met with the Plaintiff and told him to stop filing grievances about the incident.

b. In *Adams v. Bucks County et al.*, 23-cv-1178, Plaintiff was an inmate at the Bucks County Prison when he was attacked by other inmates due to the deliberate indifference of staff at the prison, where the guards didn't intervene and help Plaintiff. Further, Mr. Adams was denied adequate medical care from the attack.

c. In *Yarnall v. Bucks County et al.*, 16-cv-1291, Plaintiff was an inmate at the Bucks County Prison when she died from detoxing from narcotics. The Defendants were on notice as to her drug addiction and/or medical needs, but did not provide the proper supervision and medical care for the decedent.

d. In *Wilson v. Bucks County et al.,* 23-cv-912, Plaintiff was attacked by various corrections officers at the Bucks County Prison and was denied adequate medical care for his injuries.

e. In *Covington v. Bucks County et al.,* 19-cv-3062, Plaintiff was attacked by a

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

corrections officer at the Bucks County Prison and was denied adequate medical care for his injuries.

f. In *Deems v. Phillips et al.,* 18-cv-2035, Plaintiff was brutally attacked, thrown about his cell, and punched repeatedly by corrections officers at the Bucks County Prison.

g. In *Harbaugh v. Bucks County, et al.,* 20-1685, Plaintiff's decedent died from heroin withdrawal because Bucks County did not have adequate medical care for people with opioid addiction.

h. In *Lopez v. Bucks County*, 15-2059, Plaintiff's decedent died from heroin withdrawal because Bucks County did not have adequate medical care for people with opioid addiction who were in detox at the prison.

i. In *Adami et al. v. County of Bucks, et al.*, 19-2187, Plaintiff's decedent died from heroin withdrawal because Bucks County did not have adequate medical care for people with opioid addiction who were in detox at the prison.

j. In *Poludzen v. Bucks County, et al.*, 23-505, Plaintiff fell, broke his heel, and care was delayed by approximately six weeks, which ultimately led to a more invasive surgery, and a permanent disability.

k. In *Medzadourian v. Bucks County, et al.*, 19-4752, Plaintiff injured her back while being transported to and from court in Doylestown and the Bucks County Correctional Facility. She complained of the injury but was ignored. Over a period of at least five weeks, her condition worsened until she became paralyzed and was medevacked to a local hospital for surgery to repair her back.

l. On January 16, 2023, an inmate at the Bucks County Prison named Octavious Davis,

11

under eerily similar circumstances as the instant matter, died of a drug overdose while incarcerated. Davis had 7-amino-clonazepam and mirtazapine, and two illegal substances xylazine and fentanyl, in his blood when he died; and, the blood test was conclusive he ingested the narcotics while in custody.

62.     As a direct and proximate cause of the Defendants' actions and inactions, the decedent suffered immense physical injuries and death.

63.     Moreover, the decedent's family suffered mental anguish and a loss of companionship, comfort, financial support, and guidance.

64.     Moreover, the decedent had death beneficiaries who will never see him again, nor will the decedent be able to provide financial support for his beneficiaries.

65.     Joshua Patterson, deceased, left surviving him, the following persons who are beneficiaries under the Wrongful Death Act:

    a.      Elijah Reyes, a minor

    b.      Jamari Reyes, a minor

    c.      Loyalty Patterson, a minor

66.     As a result of the conduct of the Defendants, as set forth herein, Joshua Patterson, deceased, suffered grave injuries and death resulting in the entitlement to damages by the beneficiaries under the Wrongful Death Act.

67.     Plaintiff Valeria Corbin, Administrator of the Estate of Joshua Patterson, claims all expenses recoverable under the Wrongful Death Act, including but not limited to damages for medical, funeral and burial expenses and expenses of administration necessitated by reason of the injuries causing Joshua Patterson's death.

12

68.     On behalf of the Wrongful Death Act beneficiaries, the Co-Administrators claim damages for monetary support that the decedent would have provided to the beneficiaries during his lifetime, including but not limited to, the support provided, or which could have been expected to have been provided to the beneficiaries.

69.     On behalf of the Wrongful Death Act beneficiaries, the Co-Administrators claim damages for services provided of which could have been expected to have been performed in the future.

70.     On behalf of the Wrongful Death Act beneficiaries, the Co-Administrators claim damages for all pecuniary loss suffered by the beneficiaries.

71.     On behalf of the Wrongful Death Act beneficiaries, the Co-Administrators claim damages for all loss of consortium, comfort, society, guidance, and tutelage that the beneficiaries may have received from the decedent by the beneficiaries as a result of decedent's untimely death.

72.     On behalf of the Wrongful Death Act beneficiaries, the Co-Administrators claim damages for the full measure of damages allowed under the Wrongful Death Act of Pennsylvania and the decisional law interpreting said Act.

73.     Plaintiff Valeria Corbin, Administrator of the Estate of Joshua Patterson, are entitled to bring this action on behalf of the Estate of Patterson under and by virtue of the Survival Act, 42 Pa.C.S. §8302, and the applicable Rules of Civil Procedure and the decisional law interpreting said Act, which provides for the survivability of causes of action.

74.     As a result of the conduct of all Defendants, set forth herein, Joshua Patterson was caused grave injuries and death, resulting in the entitlement to damages by his Estate under the Survival

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

Act.

75.     As a result of the death of Joshua Patterson, his Estate has been deprived of the economic

value of his life expectancy, and Plaintiff's claim under the Survival Act, damages for all

pecuniary losses suffered by the Estate as a result of his decedent's death, including all loss of

income, earnings, retirement income, benefits and Social Security income.

76.     The administrator further claims, under the Survival Act, the total amount that the

decedent would have earned in the future, minus the costs of personal maintenance.

77.     The administrator further claims, under the Survival Act, damages for the conscious pain

and suffering endured by the decedent prior to his death, including physical pain and suffering,

and mental pain and suffering leading to the decedent's death.

78.     The administrator further claims, under the Survival Act all damages recoverable

pursuant to 42 Pa.C.S. §8302, and the decisional law interpreting said Act.

## COUNT I:
## FAILURE TO PROTECT FROM ILLICIT DRUGS
## FOURTEENTH AND EIGHTH AMENDMENT – PURSUANT TO 42 U.S.C § 1983

79.     Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this

Complaint and incorporates them herein by reference as if the same were set forth at length.

80.     At all times relevant, the decedent was incarcerated at the Bucks County Prison and

because he was in their custody, the defendants had a duty to protect him from known serious

risks to his health and safety.

81.     Defendants knew the decedent was vulnerable to overdose or injury due to his previous

narcotics usage.

82.     Defendants knew there was a pervasive drug smuggling problem at the Bucks County

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

Prison.

83.    Defendants knew of the risks and harm associated with dangerous illegal drugs.

84.    Defendants ignored their knowledge of illegal narcotics entering the Bucks County

Prison and did not do anything to curb the introduction, spread, and usage of dangerous drugs in

prison, despite their direct and prior knowledge from prisoners regarding drugs in the prison.

85.    Defendants' refusal to act constitutes deliberate indifference to the decedent.

86.    Defendants' actions and inactions constitute a violation of Plaintiff's rights under 42

U.S.C. § 1983 and under the Eighth and Fourteenth Amendments to the United States

Constitution to be free from cruel and unusual punishment, which resulted in injury and death.

87.    Defendants' mistreatment and failure to protect the decedent were objectively serious, and

the defendants subjectively ignored the risk to the inmate's safety.

      a.    Drug distribution and drug use in the Bucks County Prison is an objectively

            serious concern related to the safety and well-being of inmates; and

      b.    The Defendants were on notice of drugs being previously smuggled into the

            Bucks County Prison and did nothing to insure proper policies and procedures

            were in place and followed to insure the safety and well-being of inmates—the

            Defendants subjectively ignored the risk to inmates' safety.

WHEREFORE, Plaintiff claims of Defendants a sum in excess of one hundred and fifty thousand

dollars ($150,000) in compensatory damages, punitive damages against all defendants except

Bucks County, delay damages, attorneys fees, and allowable costs of suit and brings this action

to recover same.

## COUNT II:

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

**SUPERVISOR LIABILITY – FOURTEENTH AMENDMENT and EIGHTH AMENDMENT– PURSUANT TO 42 U.S.C. § 1983**
**PLAINTIFF V. DEFENDANTS KRATZ, COYNE, METELLUS, GALIONE, REED, ONISICK, AND SHERMAN**

88.     Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

89.     Defendants were deliberately indifferent to the needs of pretrial detainees and prisoners being held at the Bucks County Prison.

90.     Upon information and belief, Defendants knew that certain policies and customs posed a grave danger to pretrial detainees and prisoners detained in the Bucks County Correctional Facility, including the decedent.

91.     The Defendants:

    a.     Did not have a sufficient procedure and policy for the intake of new prisoners at the Bucks County Prison;

    b.     Did not have a sufficient procedure and policy for searching new prisoners at the Bucks County Prison;

    c.     Did not properly train and supervise correctional officers at the Bucks County Prison who were working at intake, on how to properly search inmates upon intake.

    d.     Knew of the *de facto* custom that correctional officers for the county, did not properly screen and search inmates at intake.

    e.     Did not have a sufficient procedure and policy for correctional officers to monitor prisoners in their housing modules.

    f.     Did not properly train and supervise correctional officers to monitor prisoners in their housing modules.

16

g.  Knew of the *de facto* custom that correctional officers for the county were not properly monitoring inmates on the housing modules to insure narcotics were not being used and distributed on the housing modules.

h.  Did not properly maintain an area of the prison for restrictive house, where inmates were properly segregated from the general population.

i.  Did not properly train and supervise correctional officers to monitor inmates in protective custody.

j.  Knew of the *de facto* custom that inmates who were supposed to be in restrictive housing units, were housed in general population modules, but locked in their cells.

k.  Did not have sufficient policies and procedures in place to insure the prison was drug free, and that drugs were not being distributed in the prison.

92.  The policy, procedures, and standards providing safety from dangerous narcotics were therefore defective and failed the decedent, ultimately causing his death.

93.  Further, the Defendants had knowledge of narcotics entering the prison previously (*see supra*, Octavius Davis) and did nothing to implement corrective policy or correct custom, which Defendants knew posed a serious danger to inmates and pretrial detainees, including the decedent.

94.  The Defendants were deliberately indifferent to the well-being of the inmates detained in the correctional facility, including the decedent. Defendants were deliberately indifferent to the consequences of their established policies and customs. Defendants' establishment and maintenance of the above-mentioned policies and customs directly caused the decedent to be deprived of his Constitutional rights.

17

95.     As a direct and proximate result of the Defendants' deliberate indifference, the decedent suffered immense physical pain, humiliation, fear, physical injuries, and death. Moreover, the decedent's family suffered mental anguish and a loss of companionship, comfort, financial support, and guidance.

96.     Plaintiff also makes a claim for such injuries, damages, and consequences resulting from the incident of which she has no present knowledge.

WHEREFORE, Plaintiff claims of Defendants a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages, punitive damages against all defendants except Bucks County, delay damages, interest, attorneys fees, and allowable costs of suit and brings this action to recover same.

**COUNT III:**
**MUNICIPAL LIABILITY**
**FOURTEENTH AMENDMENT – PURSUANT TO 42 U.S.C. § 1983**
**PLAINTIFF V. BUCKS COUNTY**

97.     Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

98.     Defendant Bucks County, promulgated and maintained policies and customs, as pled at length above, which were the moving force that caused the decedent's constitutional and statutory rights to be violated.

99.     Defendant Bucks County failed to adhere to protocol in detecting and safeguarding inmates from rampant narcotics distribution and use in their county correctional facility.

100.    Defendant Bucks County:

    a. Did not have a sufficient procedure and policy for the intake of new prisoners at the Bucks County Prison;

18

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

b.  Did not have a sufficient procedure and policy for searching new prisoners at the Bucks County Prison;

c.  Did not properly train and supervise correctional officers at the Bucks County Prison who were working at intake, on how to properly search inmates upon intake.

d.  Knew of the *de facto* custom that correctional officers for the county, did not properly screen and search inmates at intake.

e.  Did not have a sufficient procedure and policy for correctional officers to monitor prisoners in their housing modules.

f.  Did not properly train and supervise correctional officers to monitor prisoners in their housing modules.

g.  Knew of the *de facto* custom that correctional officers for the county were not properly monitoring inmates on the housing modules to insure narcotics were not being used and distributed on the housing modules.

h.  Did not properly maintain an area of the prison for restrictive house, where inmates were properly segregated from the general population.

i.  Did not properly train and supervise correctional officers to monitor inmates in protective custody.

j.  Knew of the *de facto* custom that inmates who were supposed to be in restrictive housing units, were housed in general population modules, but locked in their cells.

k.  Did not have sufficient policies and procedures in place to ensure the prison was drug free, and that drugs were not being distributed in the prison.

101.  All of the pled policies and customs were implemented before, during, and after

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

decedent's detention at the Bucks County Correctional Facility.

102.    Defendant knew of the dangers posed by these policies and customs.

103.    Further, the Defendants had knowledge of narcotics entering the prison previously (*see supra*, Octavius Davis) and did nothing to implement corrective policy or correct custom, which Defendants knew posed a serious danger to inmates and pretrial detainees, including the decedent.

104.    Specifically, Defendant Bucks County was fully aware prior to the time period of the decedent's incarceration of the serious and extreme danger posed by not properly preventing narcotics from being distributed and used within their prison.

105.    Despite this prior knowledge, Defendant Bucks County, took no steps to enact proper policies to remedy the problematic policies and customs.

106.    Had Defendant Bucks County properly promulgated appropriate protocol, custom, or adequately trained and/or supervised the correctional staff, the decedent would have been safe, and not have died under their supervision.

107.    Defendant Bucks County was deliberately indifferent to the constitutional rights of the decedent.

108.    Defendant Bucks County's policies and customs were a direct and proximate cause of Plaintiff's injuries and damages.

109.    As a direct and proximate result of Defendant Bucks County, policies and customs, the decedent suffered immense physical pain, humiliation, fear, physical injuries and death. Moreover, the decedent's family suffered mental anguish and a loss of companionship, comfort, financial support and guidance.

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

110.     Plaintiff also makes a claim for such injuries, damages and consequences resulting from the incident of which he has no present knowledge.

WHEREFORE, Plaintiff claims of Defendants a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages, punitive damages against all defendants except Bucks County, delay damages, interest, attorneys fees and allowable costs of suit and brings this action to recover same.

### COUNT IV:
### WRONGFUL DEATH (PENNSYLVANIA LAW)
### PLAINTIFF v. ALL INDIVIDUAL DEFENDANTS

111.     Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

112.     Plaintiff brings the action on behalf of the beneficiaries under and by virtue of the Wrongful Death Act, 42 Pa.C.S.A. § 8301, and the Applicable Rules of Civil Procedure.

113.     The decedent is survived by beneficiaries under the Wrongful Death Act.

114.     As a result of the conduct of Defendants, as set forth herein, the deceased, was caused grave injuries and death resulting in the entitlement to damages by the beneficiaries under the Wrongful Death Act.

115.     Plaintiff claims all expenses recoverable under the Wrongful Death Act, including but not limited to damages for medical, funeral, and burial expenses and expenses of administration necessitated by reason of the injuries causing the decedent's death.

116.     On behalf of the Wrongful Death Act beneficiaries, the Administrator claims damages for services provided which could have been expected to have been performed in the future.

117.     On behalf of the Wrongful Death Act Beneficiaries, the Administrator claims damages

21

for all pecuniary loss suffered by the beneficiaries.

118.    On behalf of the Wrongful Death Act beneficiaries, the Administrator claims damages for all loss of comfort, society, guidance, and tutelage that the beneficiaries may have received from the decedent by the beneficiaries as a result of decedent's untimely death.

119.    On behalf of the Wrongful Death beneficiaries, the Administrator claims damages for the full measure of damages, including punitive damages, allowed under the Wrongful Death Act of Pennsylvania and the decisional law interpreting said Act.

WHEREFORE, Plaintiff claims of Defendants a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages, punitive damages, delay damages, interest, attorneys fees and allowable costs of suit and brings this action to recover same.

## COUNT V:
## SURVIVAL ACTION (PENNSYLVANIA LAW) –
## PLAINTIFF v. ALL INDIVIDUAL DEFENDANTS

120.    Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

121.    Plaintiff brings this Survival Action under and by virtue of 42 Pa.C.S. §8302, and the applicable Rules of Civil Procedure and the decisional law interpreting the Act.

122.    As a result of the negligence of all Defendants set forth herein, the decedent, was caused grave injuries and death, resulting in the entitlement to damages by her Estate under the Survival Act.

123.    As a result of the decedent's death, the Estate has been deprived of the economic value of his life expectancy, and Plaintiff claims under the Survival Act, damages for all pecuniary losses suffered by the Estate as a result of her decedent's death, including all loss of income, earnings,

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

retirement income, benefits and Social Security income.

124.    The Administrator further claims, under the Survival Act, the total amount that the

decedent would have earned in the future, minus the costs of personal maintenance.

125.    The Administrator further claims, under the Survival Act, damages for the conscious pain

and suffering endured by decedent prior to death, including physical pain and suffering, and

mental pain and suffering leading to decedent's death.

126.    The Administrator further claims, under the Survival Act all damages, including punitive

damages, recoverable pursuant to 42 Pa.C.S. § 8302, and the decisional law interpreting said Act.

WHEREFORE, Plaintiff claims of Defendants a sum in excess of one hundred and fifty

thousand dollars ($150,000) in compensatory damages, punitive damages, delay damages,

interest, attorneys fees and allowable costs of suit and brings this action to recover same.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to each count and each Defendant.

RESPECTFULLY SUBMITTED,

September 28, 2023                        /s/Brian Zeiger
DATE                                     BRIAN ZEIGER
                                         IDENTIFICATION NO.: 87063
                                         LEVIN & ZEIGER, LLP
                                         TWO PENN CENTER
                                         1500 JFK BLVD STE 620
                                         PHILADELPHIA, PA 19102
                                         215.546.0340
                                         zeiger@levinzeiger.com

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340